UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL PALICZUK,

    Plaintiff,

v.                                           Case No. 09-10794

UNUM LIFE INSURANCE               HONORABLE AVERN COHN
COMPANY,

    Defendant.

_____/

## MEMORANDUM AND ORDER
## DENYING PLAINTIFF'S MOTION TO REVERSE ERISA BENEFITS DECISION
## AND DISMISSING CASE

I.  Introduction

This is a benefits case under the Employment Retirement Income Security Act, 29 U.S.C. § 1001, et seq (ERISA).  Plaintiff Michael Paliczuk (Paliczuk) is suing defendant UNUM Life Insurance Company, Inc. (UNUM).  He claims that UNUM wrongfully denied his claim for long term disability (LTD) benefits under a group insurance policy (plan) held by his former employer, Milliken Millwork, Inc. (Milliken) and issued and administered by UNUM.  As will be explained, UNUM initially found Paliczuk disabled under the plan and paid benefits for 24 months; it thereafter determined that he no longer met the definition of disability.  Paliczuk says this decision was arbitrary and capricious.

The matter is before the Court on Paliczuk's motion to reverse UNUM's determination.  For the reasons that follow, the motion will be denied and the case will

be dismissed.

## II. Legal Standard - Motion for Entry of Judgment

In <u>Wilkins v. Baptist Healthcare System, Inc.</u>, 150 F.3d 609 (6th Cir.1998), the Court of Appeals for the Sixth Circuit held that summary judgment procedures may no longer be used in the Sixth Circuit in denial of benefits actions under ERISA.  In <u>Wilkins</u>, the court of appeals decided a district court should adjudicate an ERISA action as if it were conducting a standard bench trial and, therefore, determining whether there is a genuine issue of fact for trial would make little sense.  150 F.3d at 618-19 (Gilman, J., concurring in part and setting out the judgment of the court of appeals on the issue regarding the summary judgment standard).

Accordingly, the Court will decide this matter under the guidelines set forth in <u>Wilkins</u>[1] by rendering findings of fact and conclusions of law based solely upon the administrative record.  See <u>Eriksen v. Metropolitan Life Ins. Co.</u>, 39 F. Supp. 2d 864

---

[1] The court of appeals' "Suggested Guidelines" are as follows:
1. As to the merits of the action, the district court should conduct a <u>de novo</u> review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly.  The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.
2. The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part.  This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.
3. . . . the summary judgment procedures set forth in Rule 56 are inapposite to ERISA actions and thus should not be utilized in their disposition.
150 F.3d at 619.

(E.D. Mich. 1999).

### III.  Analysis

#### A.  Findings of Fact

The following facts are gleaned from the administrative record.

##### 1.  Relevant Plan Provisions

###### a.  Definition of Disability

The plan defines disability as follows:

-you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
...

After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education or experience.

###### b.  Paliczuk's Claim

Paliczuk was employed by Milliken as a "truck switcher."  Milliken explained that a truck switcher "[m]aintains and services truck needs, e.g. gasoline, oil, lubrication, cooling system, battery and other functional parts to facilitate safe transportation," and may "make minor repairs and adjustments" and "facilitates the loading department in moving truck/trailer to assigned docks throughout the shift."

While employed by Milliken, Paliczuk was involved in a single car accident on June 16, 2005 when he struck a guard rail and injured his back.  In September 2005, Paliczuk filed a claim for benefits, indicating that he was unable to perform his duties as a truck switcher because of the accident, which rendered him "unable to walk, bend, sit [or] stand for periods of time."  On September 6, 2005, Paliczuk's then treating

3

physician, Dr. Robert C. Meyer, told UNUM that Paliczuk was diagnosed with lumbar radiculopathy, facet joint disease, bulging, lumbar disc, and sacroiliac joint pain. Dr. Meyer also said that Paliczuk was restricted from lifting, bending, twisting climbing or prolonged sitting. On October 13, 2005, UNUM granted Paliczuk benefits, dating back to September 14, 2005, finding him disabled based on his inability to perform the duties of his occupation. UNUM, however, informed Paliczuk that after a period of 24 months, he would be disabled only if he was unable to perform the duties of <u>any</u> gainful occupation for which he was reasonably qualified.

On March 23, 2006, UNUM requested from Paliczuk all medical records from Drs. Earmond Kerkar, Robert Meyer, Asad Mazhari, who he identified as treating physicians. On April 7, 2006, UNUM requested all medical records from Theramatrix, where Paliczuk was receiving physical therapy.

On July 21, 2006, in response to UNUM's request, Dr. Mazhari reported that Paliczuk could sit, stand and walk "intermittently" and "at will," that he could frequently lift or carry up to 10 pounds, that he could occasionally lift or carry up to 15 pounds and could occasionally push or pull no more than 10 pounds.

On September 21, 2006, a UNUM representative called Paliczuk and explained to him that after 24 months, the definition of disability changes to being unable to perform any gainful occupation as opposed to his own occupation. By letter of December 8, 2006, UNUM informed Paliczuk of the same and noted that his 24 months will expire on September 14, 2007. UNUM also informed Paliczuk that it was "beginning our evaluation of your eligibility for benefits beyond 24 months" and that this "process includes reviewing current medical and vocational information from your physician and

4

other sources."

On February 15, 2007, UNUM submitted a questionnaire to Drs. Meyer, Kerkar and Mazhari asking various questions about Paliczuk's medical condition. Dr. Kerkar responded that Paliczuk's restrictions and limitations were "not to lift more than 10 pounds, not to bend or twist, no squatting [and] no kneeling." Dr. Mazhari reported that he had "not examined [Paliczuk] since 7-18-06 [and therefore] cannot provide answers" to the questions. Dr Meyer responded that Paliczuk's only restrictions were "minimal lifting [and] bending (over 20 lbs.)." UNUM also requested Paliczuk's physical therapy medical records from Rehabilitation Specialists of Michigan on March 21, 2007.

UNUM had Paliczuk interviewed by a field representative on April 4, 2007. Paliczuk informed that he had applied for and was denied Social Security benefits. The Social Security Administration's denial letter was sent to UNUM. The letter stated that the "medical information shows that although you may experience discomfort in your back at times, you are able to stand, walk and move about satisfactorily," and that his back issues did not prevent him from performing substantial work.

On May 30, 2007, UNUM conducted a clinical review of Paliczuk's file by Linda McKinney, R.N. She recommended that an independent medical examination be conducted "to better understand [Paliczuk's] current clinical status and functional ability." She also noted that because he "has chosen not to have further surgery and some [restrictions and limitations] would be reasonable to expect," yet it is "unclear why the 45 [year old] cannot perform some level of full time activities" given his condition."

On June 20, 2007, Dr. Pat Young, an orthopedic medical consultant for UNUM and board certified in orthopedic surgery, wrote to Dr. Kerkar asking whether, in Dr.

5

Kerkar's opinion, Paliczuk could "be expected to do sedentary work at this time?" Dr. Kerkar responded on June 25, 2007. He did not answer the question but rather stated that Paliczuk's "restrictions are not to lift more than 10 lbs., not to carry more than 10 lbs.," and "not to bend, not to twist, not to squat [and] not to kneel."

On June 28, 2007, UNUM confirmed that Paliczuk would undergo an independent medical examination (IME) by Dr. Peter Samet.

Thereafter, Dr. Samet conducted a direct clinical examination of Paliczuk, which included taking his medical history, a neurological examination, skeletal examination, and spinal examination. Dr. Samet also reviewed Paliczuk's entire medical file. Dr. Samet submitted a written report on July 10, 2007, summarizing his findings and conclusions as follows:

> At this point, based on a physical examination, this is almost a normal examination. The patient has normal strength and sensation, as well as full range of motion. Therefore, the patient is able to do some sort of work. Based on a purely prophylactic basis, I recommend that the patent not return back to work as a fueler/switcher due to the fact that he has had surgery done and it could introduced some instability in his back. He is certainly capable of returning back to work with light to medium duty, meaning no lifting more than 20 lbs. And no twisting or bending. He would be capable of walking and standing, bur no more than 4-6 hours a day. I would also recommend no climbing up and down trucks and no twisting or pulling. The nature of these restrictions would likely be permanent.

UNUM also had a vocational assessment conducted by a vocational consultant, Kenneth Maxwell, "to assess [Paliczuk's] education, training and/or experience to determine if he can perform other occupations" than that of a truck switcher. The vocational assessment assumed that Paliczuk had the physical restrictions noted by Dr. Samet and that gainful employment would be employment at $8.53/hour. The vocational assessment concluded that there was both gainful sedentary and light duty

6

work which Paliczuk could perform within his medical restrictions and consistent with his education, training and background.

Based on this information, UNUM wrote to Paliczuk on September 10, 2007 stating that it no longer considered him disabled under the plan because he was capable of some gainful work.

On November 15, 2007, Paliczuk submitted an appeal and enclosed two additional documents: (1) a "disability certificate" from Dr. Kerkar that says Paliczuk is disabled but does not identify any restrictions or limitations, and (2) a November 5, 2007 letter from Dr. Kerkar which simply stated that Paliczuk "was advised not to lift more than 10 lbs. or consistently carry more than 5-10 lbs. [Paliczuk] was advised not to bend, kneel or crawl. [Paliczuk] was also advised not to reach above his shoulders. [Paliczuk] was advised to sit and stand at will. [Patient] is considered disabled at this time.  Treatment is still continued."

On December 4, 2007, UNUM requested Dr. Kerkar's entire updated medical file concerning Paliczuk.  On December 14, 2007, UNUM wrote to Paliczuk asking him to contact Dr. Kerkar to expedite the review of his appeal.  On December 26, 2007, UNUM informed Paliczuk that it would need an extension of up to 45 days to decide his appeal because it only just received his medical records from Dr. Kerkar.

On February 5, 2008, Paliczuk's entire file, including the two additional documents from Dr. Kerkar noted above, were examined an reviewed by Dr. Woolon W. Doane.  Dr. Doane reported:

> I have reviewed all medical and clinical evidence provided to me by Company personnel bearing on the impairments for which I am by training and experience capable to assess.  I have also reviewed the medical information from Drs.

> Meyer (Family Practice), Kerkar (pain management), Maxhari [sic] (neurosurgery), Samet (IME-PM and R), field report of Mr. Koslovich, and PT records from Theramatrix and Rehabilitation Specialists of Michigan.  I also reviewed the comprehensive and detailed review of available medical information by D. Frank, PT dated 1.16/08.
> Dr. Doane concluded that "[n]o new medical information was provided which [Paliczuk's] appeal of the denial of continued benefits" that would alter the denial.

Dr. Doane in part explained:

> Dr. Kerkar examined the claimant for the first time on 8/8/05 . . . On clinical emanation, Dr. Kerkar reported palpable tenderness in the low back area but no abnormal physical findings otherwise with specific reference to no loss of sensation or motor function.  With no supporting evidence [abnormal neurological examination, EMG/NCS, CT, MRI], Dr, Kerkar diagnosed lumbar radiculopathy, facet joint disease, disc bulge and SI joint pain.  MRI on 7/15/05 showed only degenerative changes consistent with the claimant's age group and seen in 72-85% of asymptomatic individuals in this age group.  Once gain, I will point out imaging studies to this date had only pre-existing degenerative lumbar spinal changes not incompatible with the claimants [sic] age.  Prior to 8/8/05 office visit with Dr. Kerkar, physical therapist Mr. Molino of Theramatrix noted on 7/1/05 that lumbar range of motion was normal for flexation and extension (70 and 20°) as well as side bending (15-20°). Straight leg raise to 75-80° with pain in low back only (tight hamstrings) was normal and muscle strength was essentially normal.  Thus, it is unclear the basis on which Dr. Kerkar made his diagnosis on 8/6/05.
> . . .
> Nevertheless, Dr. Kerkar proceeded with injection therapies over the ensuing two years that included epidural injections, facet injections and sacroiliac injections all of which resulted only in reported transient relief of symptoms.  Dr. Kerkar referred the claimant to Dr. Mazhari, neurosurgeon.
> . . .
> Dr. Mazhari examined the claimant on 10/25/05.  Dr. Mazhari reported a completely normal neuromuscular, skeletal and functional examination but proceeded to obtain a lumbar mylogram on 11/08/05 with CT which was only suspicions for compression of the right nerve at L4 and L5 that did not change with flexion and extension and there was no evidence of subluxation despite the normal physical and neuromuscular/sensory examination, Dr. Mazhari went ahead and performed a partial laminectomy with disc resection at L-4-5 and L5-S1 level.  The claimant's recovery was uncomplicated, but, without surprise, symptoms of low back and right buttock pain persisted (so-called "failed back syndrome") – . . . Dr. Mazhari's and Dr. Kerkar's medical records did not describe neuromuscular or skeletal functional loss during the course of their ministrations to date.

> Dr. Doane also noted that Dr. Samet found an essentially "normal general,

neuromuscular and skeletal examination except for degenerative changes about both knees with full range of motion in axel spine." Dr. Doane concluded that "[i]t is clear . . . that deconditioning plays a significant role in this claimant's continued symptoms and self-limiting behavior since he reports a primary sedentary left-style since [the car accident] on 6/16/05" and that the "available medical evidence does not support that he sustained injuries on 6/16/05 expected to result in ongoing impairment above a four week period due to acute muscle strain recovery."

On February 11, 2008, the vocational assessment aspect of Paliczuk's claim was reviewed by a senior vocational rehabilitation consultant, Dr. G. Shannon O'Kelley. Dr. O'Kelley concluded that the vocational assessment was sound.

On February 12, 2008, UNUM informed Paliczuk that his appeal was denied. UNUM also informed Paliczuk that he had 30 days to submit any additional information. Paliczuk did not do so but instead filed the instant action.

B.  Conclusions of Law

1.  Standard of Review

The parties agree that the standard of review in this case is whether the denial of benefits was arbitrary and capricious because UNUM had discretionary authority to construe and interpret the policy. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 983 (6th Cir. 1991). This standard is the "least demanding form of judicial review." Administrative Committee of the Sea Ray Employees Stock Ownership and Profit Sharing Plan v. Robinson, 164 F.3d 981, 989 (6th Cir. 1999). A decision regarding eligibility for benefits is not arbitrary and capricious if the decision is "rational in light of the plan's provisions."

Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir. 1988). "A plan administrator's decision will not be deemed arbitrary and capricious so long as 'it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome.'" Kalish v. Liberty Mutual/Liberty Life Assur. Co. of Boston, 419 F.3d 501, 506 (6th Cir. 2005) (quoting Davis v. Kentucky Finance Cos. Retirement Plan, 887 F.2d 689, 693 (6th Cir. 1989). Finally, the Sixth Circuit has explained that even if the standard is deferential, it is not "inconsequential." Moon v. Unum Provident Corp., 405 F.3d 373, 379 (6th Cir. 2005). "While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions." Id.

### 2. Dr. Kerkar's Opinion

Paliczuk argues that UNUM's decision was arbitrary and capricious because it ignored Dr. Kerkar's finding of disability. Paliczuk argues that Dr. Kerkar's opinion as a treating physician is entitled to more weight. However, as Paliczuk concedes, a plan administrator need not defer to the opinions of treating physicians. In Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003) the Supreme Court explicitly rejected a treating-physician rule:

> [W]e hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

Id. See also McDonald v. W.-S. Life Ins. Co., 347 F.3d 161, 169 (6th Cir.2003) ("Generally, when a plan administrator chooses to rely on the medical opinion of one doctor over that of another ... the plan administrator's decision cannot be said to be

10

arbitrary or capricious."). Although Paliczuk argues that there is some question as to whether a treating physician who has seen a patient for a long period of time is entitled to more weight, there is no authority for such an argument. Nord is the controlling standard.

Here, as set forth in detail above, UNUM conducted several reviews of Paliczuk's case, including having an IME by Dr. Samet, who conducted both a comprehensive physical exam and document review, and a vocational assessment before denying benefits. On appeal, UNUM had a senior vocational consultant again review Paliczuk's employability and also had Dr. Doane conduct a thorough review of the entire medical file. Both Drs. Samet and Doane fully explained their conclusion that Paliczuk was not disabled despite Dr. Kerkar's contrary opinion.

This is not a case where the treating physician's opinion or medical evidence supportive of the claim was ignored or even where the treating physician was not consulted. Cf. Calvert v. Firstar Fin., Inc., 409 F.3d 286, 296 (6th Cir. 2005) (finding abuse of discretion when administrator relies on opinion of physician who fails to explain basis for rejecting other physicians' conclusions). Rather, the independent medical examiners gave detailed reports which demonstrated that they scrutinized the medical records, particularly Dr. Kerkar's opinion, and gave reasoned explanations for rejecting it based on the medical evidence.

As UNUM cogently states:

> [The] decision that [Paliczuk] was able to perform various gainful occupations after September 14, 2007 was based upon abundant medical evidence, including (1) Dr. Samet's opinion that [Paliczuk] could lift up to 20 lbs. (allowing him to perform "light duty" work) and could certainly perform "sedentary" work, (2) Drs. Meyer and Mazhari's opinions that he could lift more

11

than 10 lbs., (3) Dr. Kerkar's opinion that he could lift up to 10 lbs., (4) Drs. Young and Doane's opinions, reached after review of all medical information, and (5) the vocational assessment performed by Mr. Maxwell and reviewed by Ms. O'Kelley demonstrating that there were both gainful sedentary and light duty occupations [Paliczuk] would be capable of performing consistent with his physical limitations and his education, training and background.

### 3.  Social Security Determination

Although Paliczuk concedes that the administrative record shows that he was denied Social Security benefits, he argues that UNUM's decision can be viewed as arbitrary and capricious because he was recently granted Social Security benefits in March of 2009.  This argument lacks merit.  While the fact that an individual was awarded Social Security benefits can be relevant in determining whether a plan administrator's decision denying benefits was arbitrary and capricious, Glenn v. MetLife, 461 F.3d 6660 (6th Cir. 2006), it is not mean that an individual is automatically entitled to benefits under an ERISA plan, as the plan's disability criteria may differ from the Social Security Administration's.  Whitaker v. Hartford, 404 F.3d 947, 949 (6th Cir. 2005). Notably, Social Security determinations follow a highly deferential "treating physician rule" that does not apply in ERISA cases.  Nord, 538 U.S. at 832-33 ("[C]ritical differences between the Social Security disability program and ERISA benefit plans caution against importing a treating physician rule from the former area into the latter.").

Moreover, Paliczuk was awarded Social Security benefits after UNUM denied his claim.  As such, evidence of his award was not before UNUM nor may Paliczuk supplement the administrative record with evidence of his award.  See Storms v. Aetna Life Ins. Co., 2005 WL 2175997 (6th Cir. July 29, 2005).

### IV.  Conclusion

12

For the reasons stated above, having conducted a thorough review of the administrative record, the Court finds no evidence that UNUM's decision denying Paliczuk's claim for benefits was arbitrary or capricious. Accordingly, Paliczuk's motion to reverse ERISA benefits decision is DENIED. Given this determination, UNUM's decision is AFFIRMED. This case is DISMISSED.

SO ORDERED.

       s/ Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: October 1, 2009

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 1, 2009, by electronic and/or ordinary mail.

       s/ Julie Owens
Case Manager, (313) 234-5160